UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Maria Bustillos |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Phil Thomas (phone) | Yoseph Rixit (video) |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND (DKT. 11)

## I.  Introduction

On March 24, 2022, Ignacio Ibarra Amavizca and Pricila Ibarra (collectively, "Plaintiffs") filed this action in the Riverside Superior Court against Nissan North America, Inc. ("Nissan") and Okdak, Inc. ("Okdak," or together with Nissan, "Defendants"). Dkt. 1-2 (the "Complaint"). The Complaint advanced four causes of action against Defendants: (1) breach of an express warranty in violation of the Song-Beverly Act; (2) fraudulent inducement via intentional misrepresentation; (3) fraudulent inducement by concealment; and (4) negligent repair. *Id.*

Plaintiffs and Okdak are California citizens. Dkt. 1. However, on December 5, 2022, Plaintiffs dismissed Okdak from this action. Dkt. 1-6. Complete diversity was satisfied as to the remaining parties, Plaintiffs and Nissan. On December 27, 2022, Nissan removed this action asserting diversity jurisdiction. Dkt. 1.

On March 2, 2023, Plaintiffs moved to remand this action. Dkt. 11 (the "Motion"). On March 16, 2023, Nissan filed an opposition to the Motion. Dkt. 18 (the "Opposition"). On March 23, 2023, Plaintiffs filed a reply brief in support of the Motion. Dkt. 19 (the "Reply").

A hearing on the Motion was held on April 10, 2023, and it was taken under submission. For the reasons stated in this Order, the Motion is **DENIED**.

## II.  Background

On May 27, 2018, Plaintiffs allegedly purchased a new 2018 Nissan Altima with VIN 1N4AL3AP0JC154805 (the "Subject Vehicle"). Complaint ¶ 8. They allegedly entered into an express written contract with Nissan, which is the New Vehicle Limited Warranty ("Warranty"), which obligated Nissan to preserve or maintain the utility or performance of the Subject Vehicle or provide corresponding compensation if there was a failure to do so. *Id.* ¶ 9. It is alleged that the Warranty covers any repairs needed to correct defects in materials or workmanship of covered parts. *Id.* The basic coverage period is in place until the earlier of 36 months or 36,000 miles, and the powertrain coverage is in place until the earlier of 60 months or 60,000 miles. *Id.* The powertrain coverage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
|---|---|---|---|
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

specifically applies to the engine, transmission and transaxle, drivetrain and restraint system. *Id.* It is alleged that through the Warranty, Nissan assured consumers that it would repair any defect in materials or workmanship under normal use. *Id.*

It is alleged that Nissan manufactured and/or distributed more than 500,000 vehicles throughout the United States with defective continuously variable transmissions ("CVT"). Complaint ¶ 11. It is further alleged that this occurred between 2010 to present, and that the vehicles were sold or leased to consumers in California, including Plaintiffs. *Id.* The CVT defect allegedly causes vehicles to exhibit unusual noises; stalling; premature transmission failure; hesitation from a stop before acceleration; sudden, hard shaking during deceleration; sudden, hard shaking and violent jerking (commonly known as "juddering" or "shuddering") during acceleration; and other drivability concerns that impede the driver's safety, each and all of which prevent a CVT-equipped vehicle from operating as intended by the driver. *Id.* ¶ 12. It is also alleged that this transmission defect creates unreasonably dangerous conditions for those in the vehicles, including the risk of a crash when trying to accelerate after a stop, when accelerating to merge with highway traffic and during uphill driving. *Id.* ¶ 13.

It is alleged that Nissan knew or should have known about the safety hazard posed by the defective transmissions before the sale of CVT-equipped vehicles as the result of pre-market testing, consumer complaints to the National Highway Traffic Safety Administration, consumer complaints to Nissan and its dealers, and other sources and that this led Nissan to issue Technical Service Bulletins acknowledging the transmission defect. Complaint ¶ 14. Plaintiffs allege that Nissan was aware, on or before October 2012, that the CVT installed in the vehicles was defective and would manifest the symptoms described above. *Id.* ¶ 15. Plaintiffs further allege that Nissan knew the CVTs installed in its vehicles were prematurely failing, requiring repeated repair or replacement. *Id.* Plaintiffs also allege that Nissan knew the replacement CVTs were just as likely to fail prematurely as the originally installed CVT. *Id.* Plaintiffs also allege that Nissan's knowledge of the defects is confirmed because it monitors warranty spending by component part and regularly reviews warranty spending on repairs and replacements of the CVT and its component parts. *Id.* ¶ 16.

Plaintiffs allege that Nissan should not have sold, leased or marketed the CVT-equipped vehicles without a full and complete disclosure of the transmission defect, and it should have voluntarily recalled all CVT-equipped vehicles. Complaint ¶ 17. Plaintiffs allege that Nissan instead concealed and minimized the significance of these defects. *Id.* ¶¶ 19-20. Plaintiffs argue that Nissan is continuing to sell CVT-equipped vehicles notwithstanding that it has not developed any solution to correct the transmission defects. *Id.* ¶¶ 33, 34.

Plaintiffs allege that they would not have purchased the Subject Vehicle, or would have paid considerably less for it, if they had known of the transmission defect, and they argue that a reasonable consumer would have done the same. Complaint ¶¶ 45-46.

Although Plaintiffs purchased the Subject Vehicle on May 27, 2018, they contend that the statute of limitations has been tolled under the discovery rule, the doctrine of fraudulent concealment, and the doctrine of equitable estoppel. Complaint ¶¶ 56-77.

**III.    Analysis**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

A. Legal Standards

1. Motion to Remand

A motion to remand is the vehicle used to challenge the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *see* 28 U.S.C. § 1447(c). In general, a state civil action may be removed only if, at the time of removal, it is one over which there is federal jurisdiction. *See* 28 U.S.C. § 1441.

Diversity jurisdiction is present where the amount in controversy exceeds $75,000 and the adverse parties are citizens of different states. *See* 28 U.S.C. §§ 1332, 1441. Complete diversity of citizenship is required, *i.e.*, "the citizenship of each plaintiff [must be] different from that of each defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citing 28 U.S.C. § 1332(a)).

When a matter is removed based on a claim of diversity jurisdiction, the removing party has the burden of showing that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). "[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). Thus, "[t]he amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'" *Id.* at 416 (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)). Where it is unclear "from the face of the complaint whether the amount in controversy exceeds $75,000, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Chavez*, 888 F.3d at 416 (internal quotation marks and citations omitted).

Because federal courts are ones of limited jurisdiction, the removal statute is to be strictly construed; any doubt about removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). The removing party has the burden to establish that it was proper to do so. *Id.* "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Env't. Remediation, L.L.C. v. Dep't of Health & Env't. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000).

2. Proving the Amount in Controversy

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014)). Therefore, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* (quoting *Dart Cherokee*, 574 U.S. at 89). If "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
|---|---|---|---|
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

amount-in-controversy requirement has been satisfied." *Id.* (quoting *Dart Cherokee*, 574 U.S. at 88).[1]

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Therefore, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.*

"[A] damages assessment may require a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). "When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* Thus, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

      B.      Application

Plaintiffs do not dispute that there is complete diversity in the citizenship of the parties. However, Plaintiffs contend that Nissan has failed to establish that the $75,000 amount-in-controversy requirement is met.

The Complaint seeks "rescission of the purchase contract and restitution of all monies expended." Complaint at 25. In addition, it seeks "[o]ut-of-[p]ocket expenses" and "incidental and consequential damages . . . ." *Id.* The Complaint also seeks "a civil penalty in the amount of two times Plaintiff(s)' actual damages," "punitive damages," and "reasonable attorney's fees and costs of suit . . . ." *Id.*

Nissan contends that the amount in controversy exceeds $75,000. It is undisputed that the agreed-upon price for the Subject Vehicle was $32,752.44. Opposition at 17; *see* Dkt. 1-4 at 29-30.[2] Nissan contends that a mileage offset of $11,878.55 should not be applied but that the amount-in-controversy requirement is met even if the offset is included. Opposition at 17. Nissan contends that the maximum civil penalty should be included in the amount in controversy, which adds $32,752.44 (or $20,873.89 if a mileage offset is applied) to the amount in controversy. Opposition at 17-23. Nissan contends that Plaintiffs may seek to recover up to $45,000 in attorney's fees if they prevail on all issues. Opposition at

---

[1] Plaintiffs object that *Dart Cherokee* and *Arias* are only applicable when a court is applying the amount-in-controversy requirement from the Class Action Fairness Act ("CAFA"). However, the Ninth Circuit has applied *Dart Cherokee* beyond that context. *See, e.g.*, *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Academy of Country Music v. Continental Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021) (a notice of removal need only contain a plausible allegation as to the amount in controversy, as in CAFA cases).

[2] Although $32,752.44 was paid by Plaintiffs under the relevant contract, $1275 was applicable to the service contract, $895 was attributable to the debt cancellation agreement, and $500 was attributable to the manufacturer's rebate. Therefore, $30,082.44 was paid for the Subject Vehicle itself. Opposition at 17; *see* Dkt. 1-4 at 29-30. Nissan uses this lower amount to compute the mileage offset while using the larger figure to compute Plaintiffs' actual damages. Plaintiffs do not object to this discrepancy, so Nissan's proposed calculation is adopted for purposes of the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

24. Finally, Nissan contends that $50,000 in punitive damages should be considered as part of the amount in controversy. Opposition at 27. Under Nissan's proposed figures, the amount in controversy would be $151,621.67 with a mileage offset, and $175,378.77 without such an offset.

      1.      <u>Actual Damages</u>

Nissan has met its burden of proving the amount of actual damages sought in the Complaint. The Complaint alleges that Plaintiffs seek "restitution of all monies expended" to purchase the Subject Vehicle. Complaint at 25. "In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer . . . ." Cal. Civ. Code § 1793.2(d)(2)(B). Plaintiffs paid, or agreed to pay, $32,752.44 for the Subject Vehicle.

Plaintiffs rely on *Limon-Gonzalez v. Kia Motors Am., Inc.*, No. CV 20-4381 PA (JPRX), 2020 WL 3790838, at *3 (C.D. Cal. July 7, 2020). It held that the defendant's estimate of the plaintiffs' actual damages was insufficient when the defendant had "not provided any evidence of the total miles [the plaintiffs] drove on the car, the actual agreed-upon sale amount, or whether [the plaintiffs] paid in full or agreed to financing (and if so, how many payments were made)." *Id.* However, there is "no guesswork to be done" as to actual damages where the defendant provides "the purchase price of the [Subject] Vehicle," the amount financed, and the interest rate. *Rahman v. FCA US LLC*, No. 221CV02584SBJCX, 2021 WL 2285102, at *2 (C.D. Cal. June 4, 2021).

Nissan has presented adequate evidence as to the amount of actual damages in controversy. It presented a copy of the Retail Installment Sale Contract between Plaintiffs and Nissan's dealership. Dkt. 1-4 at 29-30. It shows that the total sale price was $32,752.44, that the amount financed was $28,048.34, that the applicable interest rate was 4.29%, and that Plaintiffs agreed to make 84 payments of $389.91, starting on August 25, 2018 and ending on July 25, 2025. *Id.* Nissan has also submitted a declaration stating that the Subject Vehicle was sold to the Plaintiffs with an odometer reading of 11 miles, and was first presented for repair at 47,395 miles. Dkt. 1-1 at 4. Nissan has presented evidence as to each of the categories of information described in *Limon-Gonzalez* and *Rahman*.

Plaintiffs also contend that Nissan may contend that the amount of actual damages must be reduced to reflect Plaintiffs' negative equity in the purchase contract. However, Nissan has not claimed such a deduction and Plaintiffs argue that any such deduction would be "wholly improper." Reply at 4. Plaintiffs have also cited authority in support of this position. *See DeLeon v. Ford Motor Co.*, No. CV 18-7975 PSG (FFMx), 2019 WL 7195325, at *7 (C.D. Cal. Nov. 13, 2019); *Gonzalez v. Ford Motor Co.*, No. LA CV 19-00652 PA (ASx), 2019 WL 6122554, at *7 (C.D. Cal. Oct. 23, 2019).

Therefore, the applicable amount of actual damages is $32,752.44, which was the total sales price.

      2.      <u>Mileage Offset</u>

The Ninth Circuit has held that the amount in controversy should be reduced to reflect the appropriate mileage offset. It ruled in *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 n.3 (9th Cir. 2018), that "[c]onsideration of the Use Offset was appropriate." *Id.* The Ninth Circuit concluded that "[t]he Use Offset measures the value of the F-150s that the putative class members purchased," and it limits the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
|---|---|---|---|
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

available damages. *Id.* Although *Schneider* was not a published decision, its holding is persuasive.

Several decisions have followed *Schneider* in applying the mileage offset. *See Davidson v. Ford Motor Co.*, No. EDCV201965FMOSHKX, 2020 WL 6119302, at *2 (C.D. Cal. Oct. 16, 2020) ("Ford has failed to take into account any reduction for the use of the vehicle . . . and thus has failed to show that the amount in controversy exceeds the jurisdictional threshold."); *Mullin v. FCA US, LLC*, No. CV 20-2061-RSWL-PJW, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020) ("Plaintiff is correct that the mileage offset may reduce the amount in controversy."). Other cases have reached the same conclusion without citing *Schneider*. *Maciel v. BMW of N. Am., LLC*, No. CV1704268SJOAJWX, 2017 WL 8185859, at *2 (C.D. Cal. Aug. 7, 2017) (applying the mileage offset in computing the amount in controversy); *Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1003 (C.D. Cal. 2021) (applying the mileage offset).

Nissan cites several decisions declining to apply the mileage offset, but none of them discussed *Schneider*. *Bugiel v. Ford Motor Co.*, No. 2:18-CV-06286-AB-FFM, 2022 WL 17486358, at *3 (C.D. Cal. Dec. 6, 2022) (rejecting the argument "that the amount [in controversy] should be reduced by offsets Ford will demand"); *Baumanns v. FCA US LLC*, No. 21-CV-1054 JLS (MSB), 2021 WL 5564497, at *4 (S.D. Cal. Nov. 29, 2021) (declining to "factor in statutory offsets in deciding the amount in controversy"); *Tucker v. FCA US LLC*, No. CV 21-2908-GW-MAAX, 2021 WL 3733243, at *3 (C.D. Cal. Aug. 23, 2021) (rejecting the application of a mileage offset because the amount of the offset is "dependent upon a factual finding made by the ultimate trier of fact"); *Wickstrum v. FCA USA LLC*, No. 3:20-CV-00336-L-JLB, 2021 WL 532257, at *2 (S.D. Cal. Feb. 12, 2021) (holding "the potential offset does not alter the amount Plaintiff might obtain if he is successful at trial" because "[t]he offset is not automatic" and the defendant "would need to affirmatively (and successfully) raise it at trial (likely through the introduction of evidence)"); *Pristave v. Ford Motor Co.*, No. CV 20-04892-AB (EX), 2020 WL 4883878, at *3 (C.D. Cal. Aug. 20, 2020) (holding that the offset generally should not be considered because "offsets sound more in the nature of a defense"); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18ML02814ABFFMX, 2018 WL 5905942, at *4 (C.D. Cal. Sept. 10, 2018) (holding "the amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses").

In general, an affirmative defense, which can be waived, need not be considered in determining the amount in controversy. "[J]ust because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010). "Further, if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Id.* However, *Schneider* "recognized that an estimate of the amount in controversy must be reduced if 'a specific rule of law or measure of damages limits the amount of damages recoverable.'" 756 F. App'x 699 (quoting *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983)).

In the Beverly-Song Act, the applicable measure of damages is restitution and, "[w]hen restitution is made . . . the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(C). The mileage on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

vehicle when it is presented for repair can be readily determined. Although *Geographic Expeditions* held that courts should be able to determine the amount in controversy without deciding the merits of the case, that issue does not apply. Further, the mileage offset is not a defense on which Nissan could not prevail. The mileage offset is part of the formula provided in Cal. Civ. Code § 1793.2 for the computation of damages. For these reasons, it is appropriate to reduce the amount in controversy by the mileage offset.

"The amount [of the mileage offset] shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(C). As described above, the car was sold with 11 miles on it and returned for repair with 47,395 miles on it. The amount paid for the Subject Vehicle was $32,752.44. Applying the formula, the mileage offset is $11,878.55, which reduces the amount in controversy to $20,873.89.

      3.    <u>Civil Penalty</u>

The parties disagree regarding whether the maximum civil penalty available under the Song-Beverly Act should be considered as part of the amount in controversy.

Many courts have included the maximum civil penalty available under the Song-Beverly Act as part of the amount in controversy, at least when the plaintiff alleges that the defendant acted willfully and requests the full penalty in the complaint. *See, e.g.*, *Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1004 (C.D. Cal. 2021) (holding "the amount in controversy estimate may include a two-times civil penalty" because that amount is requested in the complaint); *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 902 (S.D. Cal. 2021) ("[T]he Court considers those civil penalties even though Defendant disputes them in its Answer . . . ."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (holding "the civil penalty in the amount of [twice the actual damages] is properly included in the amount in controversy"); *Bugiel v. Ford Motor Co.*, No. 2:18-CV-06286-AB-FFM, 2022 WL 17486358, at *3 (C.D. Cal. Dec. 6, 2022) (holding "a two-times civil penalty [was] in controversy" because the Complaint sought that relief); *De Vidal v. Ford Motor Co.*, No. 221CV07115FLAJPRX, 2022 WL 17093070, at *3 (C.D. Cal. Nov. 21, 2022) (holding "the maximum recoverable civil penalty should be considered for purposes of determining the amount in controversy"); *Ramires v. Ford Motor Co.*, No. 221CV06362VAPPVCX, 2021 WL 5505646, at *2 (C.D. Cal. Nov. 24, 2021) (awarding the statutory maximum penalty because the Complaint alleged that the defendant's actions were willful and that the plaintiff was entitled to the full penalty); *Jimenez v. Ford Motor Co.*, No. 21-CV-04967-VC, 2021 WL 5149865, at *1 (N.D. Cal. Nov. 5, 2021) (following *Brady*); *Ghebrendrias v. FCA US LLC*, No. 221CV06492VAPPDX, 2021 WL 5003352, at *2 (C.D. Cal. Oct. 28, 2021) (including the maximum available civil penalty where it was sought in the complaint); *Nieratko v. Ford Motor Co.*, No. 21-CV-01112-BAS-BGS, 2021 WL 4438397, at *4 (S.D. Cal. Sept. 28, 2021) (including the maximum allowable civil penalty in the amount in controversy); *Tucker v. FCA US LLC*, No. CV 21-2908-GW-MAAX, 2021 WL 3733243, at *4 (C.D. Cal. Aug. 23, 2021) ("The mere fact that Plaintiffs *seek* such a civil penalty puts in-controversy an amount equal to twice the amount of actual damages."); *Treuhaft v. Mercedes-Benz USA, LLC*, No. 220CV11155SVWGJS, 2021 WL 2864877, at *2 (C.D. Cal. July 6, 2021) (including the maximum recoverable civil penalty because it could reasonably be recovered);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

*Rahman v. FCA US LLC*, No. 221CV02584SBJCX, 2021 WL 2285102, at *2 (C.D. Cal. June 4, 2021) (including the maximum penalty because "Defendant is not required to prove the case against itself"); *Zeto v. BMW of N. Am., LLC*, No. 20-CV-1380-GPC-KSC, 2020 WL 6708061, at *4 (S.D. Cal. Nov. 16, 2020) (holding "civil penalties [under the Song-Beverly Act] are not speculative and should be included"); *Bui v. Mercedes-Benz USA, LLC*, No. 20-CV-1530-CAB-WVG, 2020 WL 12688081, at *2 (S.D. Cal. Sept. 30, 2020) (rejecting the argument that "it is inappropriate to include any potential civil penalty in the amount in controversy calculation because Plaintiff's entitlement to penalties is speculative"); *Park v. Jaguar Land Rover N. Am., LLC*, No. 20-CV-00242-BAS-MSB, 2020 WL 3567275, at *4 (S.D. Cal. July 1, 2020) ("Plaintiff's own allegations support the conclusion that the maximum amount of civil penalties is properly included in the amount in controversy determination"); *Brooks v. Ford Motor Co.*, No. CV 20-302 DSF (KKX), 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) (holding that "[i]t is sufficient that Plaintiff alleged an intentional failure to comply and sought the civil penalty" because "[i]t would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act") (internal quotation omitted); *Verastegui v. Ford Motor Co.*, No. 19-CV-04806-BLF, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020) (including the statutory maximum penalty even though "Plaintiff now asserts he might recover damages that are less than what he seeks in his Complaint"); *Martinez v. Ford Motor Co.*, No. 118CV01607LJOJLT, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (including the maximum statutory penalty because the plaintiff had "specifically pray[ed] for a civil penalty" of twice the actual damages); *Lee v. FCA US, LLC*, No. CV165190PSGMRWX, 2016 WL 11516754, at *2 (C.D. Cal. Nov. 7, 2016) (holding "the law counsels" against disregarding civil penalties for purposes of calculating the amount in controversy); *Lawrence v. FCA US LLC*, No. CV1605452BROGJSX, 2016 WL 5921059, at *4 (C.D. Cal. Oct. 11, 2016) ("Song-Beverly's civil penalty damages are properly included in the amount in controversy.").

Plaintiffs cite several cases supporting their position. However, most are distinguishable because the complaints sought the maximum civil penalty but did not include allegations that the defendants had acted willfully. *See, e.g.*, *Sood v. FCA US, LLC*, No. CV 21-4287-RSWL-SKX, 2021 WL 4786451, at *5 (C.D. Cal. Oct. 14, 2021) ("Defendant has not provided any evidence, nor pointed to any allegations in the Complaint, to support Plaintiffs' entitlement to civil penalties."); *Vega v. FCA US LLC*, No. 221CV05128VAPMRWX, 2021 WL 3771795, at *3 (C.D. Cal. Aug. 25, 2021) ("Defendant has not pointed to any specific allegations in the complaint or notice of removal suggesting that the civil penalty would be awarded, or how much it might be if it were."); *Khachatryan v. BMW of N. Am., LLC*, No. CV 21-1290 PA (PDX), 2021 WL 927266, at *3 (C.D. Cal. Mar. 10, 2021) ("BMW fails to identify which allegations in the Complaint would justify such an award; nor does BMW submit evidence regarding the size of civil penalties awarded in analogous cases."); *Ronquillo v. BMW of N. Am., LLC*, No. 3:20-CV-1413-W-WVG, 2020 WL 6741317, at *3 (S.D. Cal. Nov. 17, 2020) (declining to include the maximum penalty because the defendant failed to "point[] to allegations in the Complaint suggesting such an award would be appropriate"); *Garcia v. FCA US LLC*, No. 220CV04779VAPMRWX, 2020 WL 4219614, at *3 (C.D. Cal. July 22, 2020) ("Defendant has not pointed to any specific allegations in the action suggesting that the civil penalty would be awarded, or how much it might be if it were."); *Golden Fish LLC v. FAA Beverly Hills, Inc.*, No. 220CV04224RGKAGR, 2020 WL 3076350, at *2 (C.D. Cal. June 10, 2020) (declining to include the Song-Beverly Act penalty where "Plaintiff does not invoke the Song-Beverly Act in her complaint"); *Castillo v. FCA USA, LLC*, No. 19-CV-151-CAB-MDD, 2019 WL 6607006, at *2 (S.D. Cal. Dec. 5, 2019) (excluding the penalty because there was no "specific argument or evidence for its inclusion"); *Makol v. Jaguar Land Rover N. Am., LLC*, No. 18-CV-03414-NC, 2018 WL 3194424, at *3 (N.D. Cal. June 28, 2018) (same); *Zawaideh v. BMW of N. Am., LLC*, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

17-CV-2151 W (KSC), 2018 WL 1805103, at *3 (S.D. Cal. Apr. 17, 2018) ("Defendant fails to identify which allegations in the Complaint would justify such an award; nor does Defendant submit evidence regarding the size of civil penalties awarded in analogous cases."); *Eberle v. Jaguar Land Rover N. Am., LLC*, No. 218CV06650VAPPLA, 2018 WL 4674598, at *2 (C.D. Cal. Sept. 26, 2018) ("Defendant, however, has not pointed to any specific allegations in the action suggest that the civil penalty would be awarded, or how much it might be if it were.").

Other cases cited by the Plaintiffs are distinguishable because the defendants did not state the amount of the civil penalty that the plaintiff might recover. *See, e.g.*, *Esparza v. FCA US LLC*, No. 221CV01856RGKMRW, 2021 WL 949600, at *1 (C.D. Cal. Mar. 12, 2021) ("Although civil penalties may be included in determining the amount in controversy, Plaintiff has not indicated what that amount would be.").

The remaining cases cited by Plaintiffs can be distinguished on other grounds. For example, Plaintiffs rely on *Savall v. FCA US LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021). However, the full civil penalty was not included in the amount in controversy because "even Plaintiff's lengthy Complaint alleges only that FCA's obligations were willfully violated because, in effect, FCA, with knowledge it could not repair the vehicle, failed to promptly provide Plaintiff with satisfactory redress." *Id.* Plaintiffs have made different allegations. They allege that Nissan sold a vehicle to them with significant safety defects that could have caused serious injury or death, and did so after knowing of the corresponding defects for several years. This is far more than the "boilerplate allegations" addressed in *Savall*.

*D'Amico v. Ford Motor Co.*, No. CV 20-2985-CJC (JCX), 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) is distinguishable because there the "Defendant point[ed] only to Plaintiff's allegation that she should recover a civil penalty" without discussing the willfulness of the alleged violations in more depth. *Id.* Here, the Complaint contains detailed allegations regarding Nissan's alleged willfulness. *D'Amico* is also inconsistent with most of the cases above in holding that the removing defendant must prove the remedy to which a plaintiff would be entitled by a preponderance of the evidence.

*Chavez v. FCA US LLC*, No. 219CV06003ODWGJSX, 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020) is distinguishable because it held that, when "the amount of actual damages is speculative . . . an attempt to determine the civil penalty is equally uncertain." *Id.* Here, there is no substantial uncertainty as to the amount of actual damages sought. *Chavez* is also distinguishable because the defendant in *Chavez* "ha[d] not offered any evidence to support . . . an award" of civil penalties, but Nissan has pointed to the allegations in the Complaint regarding its allegedly willful misconduct and how that alleged misconduct allegedly put Plaintiffs' lives at risk.

*Lopez v. FCA US LLC*, No. 219CV07577RGKMRW, 2019 WL 4450427, at *2 (C.D. Cal. Sept. 16, 2019) is similar. It held that, "while civil penalties are available for willful failure to comply with the Song-Beverly Act, Defendant has not offered any evidence to support such an award." *Id.* Here, Plaintiffs have alleged that Nissan engaged in willful misconduct that put them in harm's way and Nissan has highlighted these allegations.

*Edwards v. Ford Motor Co.*, No. CV1605852BROPLAX, 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016) is distinguishable on the same basis as *Chavez*. *Edwards* held that the "Defendant failed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

establish the amount of actual damages at issue, which is necessary to determine the total civil penalty." *Id.* Because Nissan has adequately established the amount of actual damages that Plaintiffs have placed in issue, *Edwards* does not apply.

Plaintiffs also cite *Sanchez v. FCA US LLC*, No. CV2105534RSWLPLAX, 2021 WL 5276829, at *1 (C.D. Cal. Nov. 12, 2021) for the proposition that the civil penalty should not be included where "Defendant points to no evidence or factually analogous cases suggesting that a civil penalty will more likely than not be awarded here." *Id. Sanchez* is distinguishable on two grounds. *First*, Plaintiffs have made detailed allegations as to the willfulness of Nissan's conduct. Plaintiffs' allegations provide substantial basis for belief that, if established, they may be awarded the maximum civil penalty under the Beverly-Song Act. *Second*, most of the cases in this area have not required defendants to prove by a preponderance that a civil penalty would be awarded.

Finally, the cases cited by Nissan are consistent with the applicable definition of the amount in controversy. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927. Thus, the amount in controversy is the amount "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Therefore, Nissan need not prove that Plaintiffs are more likely than not to obtain the maximum civil penalty award; Nissan need only prove, by a preponderance of the evidence, that Plaintiffs have placed this amount in controversy. Nissan has met its burden, and a civil penalty of twice Plaintiffs' actual damages shall be included in the amount in controversy. The resulting amount in controversy is $62,621.67.

    4.    <u>Attorney's Fees</u>

"Because the law entitles [Plaintiffs] to an award of attorneys' fees if [they are] successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). "Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 793 (quoting *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013)). Thus, "[t]he defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Id.* at 788.

"The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience." *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002). In addition, a defendant has provided sufficient evidence of the amount of attorney's fees in controversy when it "compares the litigation strategies and timelines of the current case and . . . the cases it cites." *Guzetta v. Ford Motor Co.*, No. 221CV09151MEMFPVCX, 2022 WL 1044173, at *6 (C.D. Cal. Apr. 5, 2022). In particular, "Plaintiff's counsel's actual fee requests in nearly-identical cases [are] highly probative of the amount put in controversy by their request to recover fees in this case." *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18ML02814ABFFMX, 2018 WL 5905942, at *3 (C.D. Cal. Sept. 10, 2018). Also, when there has been "very active litigation in [an]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
|---|---|---|---|
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

action before (and now after) removal," "the likelihood of a substantial fee request is not speculative . . . ." *Rahman v. FCA US LLC*, No. 221CV02584SBJCX, 2021 WL 2285102, at *3 (C.D. Cal. June 4, 2021).

"Nevertheless, district courts have discretion to disregard attorneys' fees in determining the amount in controversy where a fee estimate is too speculative." *Sood v. FCA US, LLC*, No. CV 21-4287-RSWL-SKX, 2021 WL 4786451, at *6 (C.D. Cal. Oct. 14, 2021). For example, when the defendant "provides no estimate of the attorneys' fees that have accrued or will accrue" in the case at bar, the defendant has not met its burden. *Id.*; *see also Vega v. FCA US LLC*, No. 221CV05128VAPMRWX, 2021 WL 3771795, at *4 (C.D. Cal. Aug. 25, 2021) ("Defendant makes no effort to explain what amount of attorneys' fees might be sought or awarded in this case, neglecting to include so much as an estimate of the hours or billing rates that might apply."); *Mahlmeister v. FCA US LLC*, No. CV2100564ABAFMX, 2021 WL 1662578, at *3 (C.D. Cal. Apr. 28, 2021) (declining to include attorney's fees when the defendant "submit[ted] a declaration that states conclusorily" the amount of attorney fees without "explain[ing] how this amount is determined, what factors about this specific case make these calculations more likely than not, or how other similar cases have resulted in fees that satisfy the amount in controversy"); *Eberle v. Jaguar Land Rover N. Am., LLC*, No. 218CV06650VAPPLA, 2018 WL 4674598, at *3 (C.D. Cal. Sept. 26, 2018) ("Courts have been reluctant to estimate reasonably attorneys' fees without knowing what the attorneys in the case bill, or being provided with 'evidence of attorneys' fees awards in similar cases' . . . .") (quoting *Edwards v. Ford Motor Co.*, No. 16-cv-05852 BRO (PLAx), 2016 WL 6583585, at *5 (C.D. Cal. Nov. 4, 2016)). Other courts have declined to include attorney's fees when "a fee estimate is too speculative because of the likelihood of a prompt settlement . . . ." *Kinneberg v. Ford Motor Co.*, No. CV2000865ABFFMX, 2020 WL 3397752, at *2 (C.D. Cal. June 18, 2020) (quoting *Fritsch*, 899 F.3d at 795).

Plaintiffs have cited a few settlements where their counsel obtained between $2500 and $9500 in attorney's fees, costs and expenses. Motion at 9. However, "[t]he amount in controversy is the amount a plaintiff's claims put in controversy, not the amount plaintiffs might eventually agree to in settlement, which by definition is a compromise of claims." *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18ML02814ABFFMX, 2018 WL 5905942, at *3 (C.D. Cal. Sept. 10, 2018). The amount of attorney's fees in controversy is likely to be substantially higher than $9500.

Nissan relies on a recent case where Plaintiffs' counsel requested $71,474.02 in attorney's fees. *Wirth v. Ford Motor Co.*, Case No. 5:18-cv-00463-AB-FFM, Dkt. 24 (C.D. Cal. Nov. 9, 2021). Ultimately, the parties resolved the matter, and $34,500.00 was awarded for attorney's fees, costs, and expenses. *Wirth v. Ford Motor Co.*, Case No. 5:18-cv-00463-AB-FFM, Dkt. 30 (C.D. Cal. Jan. 11, 2022). Nissan has provided adequate evidence that *Wirth* is comparable to this matter. *Wirth* was a "lemon law" case with related fraud claims. In *Wirth*, the parties filed their initial pleadings and litigated a motion to compel arbitration. In this action, the parties have completed both of those activities.

Based on a review of the timesheets submitted by Plaintiffs' counsel in *Wirth*, the activities there are comparable to those that have been conducted, or would necessarily be conducted, in this action. *Wirth v. Ford Motor Co.*, Case No. 5:18-cv-00463-AB-FFM, Dkt. 24-2 (C.D. Cal. Nov. 9, 2021). The amount of actual damages is also comparable. In *Wirth*, the all-in gross capitalized cost of the vehicle was $22,772.25. *Wirth v. Ford Motor Co.*, Case No. 5:18-cv-00463-AB-FFM, Dkt. 24 at 7 (C.D. Cal. Nov. 9, 2021). *Wirth* was one of the constituent cases in a large, complex multi-district litigation. It may have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

been somewhat more costly to litigate *Wirth* as a result. However, the fee request and settlement in *Wirth* suggest that Nissan has proven, by a preponderance of the evidence, that the attorney's fees contribute $25,000 to the amount in controversy.

Nissan also relies on *Vasquez v. Ford Motor Co.*, N16CV-0075, Order on Motion for Attorney's Fees and Costs (Cal. Super. Ct. March 1, 2018) to support its position. In that action, approximately $34,000 in attorney's fees was awarded. Dkt. 18-5 at 6. Nissan, however, has not provided sufficient evidence as to the issues raised in that litigation and the manner in which they were litigated to determine whether that case is sufficiently similar.

Another bench officer in this District has recognized that Plaintiffs' counsel "have regularly sought over $100,000 in attorneys' fees in numerous cases similar to" this one. *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18ML02814ABFFMX, 2018 WL 5905942, at *3 (C.D. Cal. Sept. 10, 2018). It was further determined that the defendant's "declaration that the KLG Firm routinely seeks attorneys' fees of more than $100,000 in cases alleging the same claims against [the defendant] is sufficient to establish that this amount is in issue." *Id.* Although Nissan has not presented evidence of fee requests in cases premised on the alleged CVT defect at issue here, the cases brought by Plaintiffs' counsel against Ford are similar to this one. *In re Ford* also concerned the alleged malfunctioning of vehicle transmissions, and the actions in *In re Ford* all asserted claims under the Song-Beverly Act as well as several fraud theories. *Id.* at *1. This analysis further supports the conclusion above that the amount of attorney's fees is controversy is more likely than not to exceed $25,000.

It is also material that this case has been actively litigated. This included Nissan's motion to compel arbitration. Dkt. 1-4 at 5-15; Dkt. 1-5 at 51-71, 73-83. Nissan and Plaintiffs have also litigated the instant Motion. It does not appear that a prompt settlement is likely enough to make the $25,000 fee estimate a speculative one. The resulting amount in controversy is $87,621.67.

      5.    <u>Punitive Damages</u>

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), *holding modified on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

The Due Process Clause limits the relationship between actual and punitive damages. The Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424 (2003). And there is no "bright-line ratio which a punitive damages award cannot exceed." *Id.* But the Court's "jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425. Even "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.*

"[R]atios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

*BMW of North America, Inc v. Gore*, 517 U.S. 559, 582 (1996)). A higher ratio might also be appropriate where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* (quoting same).

In some cases, even a ratio of 4 to 1 may be unconstitutional. "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* The ultimate touchstones are "the facts and circumstances of the defendant's conduct and the harm to plaintiff."

When California courts evaluate the limits on punitive damages, they collapse any state-law limits into the constitutional analysis. For example, they have recognized that "the ratio should generally be no higher than four to one and almost never nine to one." *Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 561, *review denied* (Feb. 10, 2021). They have also recognized that a lesser ratio is appropriate when compensatory damages are substantial, when only one reprehensibility factor is present, or when the compensatory damages award appears to contain a punitive element (like a substantial award of emotional distress damages). *See Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.*, 62 Cal. App. 5th 88, 108 (2021), *as modified on denial of reh'g* (Apr. 7, 2021), *review denied* (June 30, 2021). "[A] 1:1 ratio of punitive to compensatory damages can in some cases—or perhaps in many cases where the compensatory damages award is substantial—be the constitutional maximum." *Id.* at 109. "However, 'there is no fixed formula that requires a court to set punitive damages equal to compensatory damages' whenever compensatory damages are substantial." *Id.* (quoting *Johnson v. Monsanto Co.*, 52 Cal. App. 5th 434, 462 (2020)).

Punitive damages are requested in the Complaint. Complaint at 25. Plaintiffs allege that Nissan engaged in fraud through intentional misrepresentations and by concealing material facts. Plaintiffs argue that Nissan knew about, but ignored, a safety defect that could have caused death or serious injury. *Id.* ¶¶ 12-14. The Complaint also alleges that Nissan had known about the defect for more than a decade, but failed to correct it. *Id.* ¶ 15. These allegations refer to a pattern or practice of misconduct. If established, substantial punitive damages could result. At present, for purposes of the Motion, Nissan has established that $20,873.89 in punitive damages, which is the same amount of actual damages, is in controversy.

Nissan incorporated by reference the discussion of three jury verdicts in *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2019 WL 693234, at *6 (N.D. Cal. Feb. 19, 2019). In all three of those cases, an auto manufacturer was sued for concealing damage, or in one case, a transmission defect, that affected a vehicle purchased by the plaintiffs. *Id.* In those cases, awards of $50,000, $150,000, and $175,000 were upheld on appeal. *Id.* This analysis reinforces the conclusion that Nissan has shown, by a preponderance of the evidence, that punitive damages contribute at least $20,873.89 to the amount in controversy.

*          *          *

Taking into account each of the elements discussed in this Order, Nissan has shown by a preponderance of the evidence that at least $108,495.56 is in controversy. This exceeds the $75,000 jurisdictional amount.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV22-02256 JAK (KK) | Date | April 19, 2023 |
|---|---|---|---|
| Title | Ignacio Ibarra Amavizca, et al. v. Nissan North America, Inc., et al. | | |

**IV.     Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

                                                                                                    :
                                                                Initials of Preparer    tj